HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| METH LAB CLEANUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BIO CLEAN, INC., et al., <br><br> Defendants. | CASE NO. C14-1259RAJ <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the Court on consideration of Defendants Bio Clean Inc. and Theresa Borst's Motion for Summary Judgment. Dkt. #133. Although not explicitly styled as a Motion for Partial Summary Judgment, the Motion does not address one of Bio Clean's counterclaims. *See id.*; Dkt. #17 at 27-28. Therefore, it will be treated as a Motion for Partial Summary Judgment. Briefing on this Motion is now complete, and after reviewing the briefs and evidence submitted, the Court GRANTS the Motion.

## II. BACKGROUND

Meth Lab Cleanup and Bio Clean are competitors in the business of decontaminating properties that have previously been used as clandestine drug laboratories. *See* Dkt. #48 at 2, ¶¶ 2-4. Theresa Borst is Bio Clean's sole owner, principal, and moving force. Dkt. #43 at 3, ¶ 12. Both Meth Lab Cleanup and Bio Clean are among the eight companies that are certified by the State of Washington to offer drug lab decontamination. *Id.* at 3, ¶¶ 9, 14. Bio Clean was started in 1998 to offer a variety

ORDER – 1

of decontamination services. Dkt. #134 at 1, ¶ 2. In 2000, Bio Clean began performing drug lab decontaminations in Washington State. *Id.* at 1, ¶ 3. Meth Lab Cleanup was started in 2003, and performs drug lab decontaminations across the country. Dkt. #43 at 1, ¶¶ 2-3. Meth Lab Cleanup also offers drug lab remediation training in multiple states, including Washington, where Meth Lab Cleanup is one of only two companies certified to do so. *Id.* at 2, ¶¶ 5, 7.

In 2007, Meth Lab Cleanup applied for three trademarks for the mark "Meth Lab Cleanup LLC." *Id.* at 7, ¶ 29. The trademarks were initially denied, because the USPTO found that the trademarks were descriptive without secondary meaning. Dkt. #48 at 3, ¶ 8. Meth Lab Cleanup then asked for reconsideration, submitting a declaration stating that Meth Lab Cleanup's use of "Meth Lab Cleanup LLC" had been continuous and substantially exclusive for the past five years. *See* Dkt. #146 at 3, ¶ 5. In 2009, the USPTO granted the trademarks. *See* Dkt. #1-1 at 2-4. In 2012, Meth Lab Cleanup applied for three trademarks for the phrase "Meth Lab Cleanup." Dkt. #43 at 7, ¶ 30. These trademarks were also initially denied, because a different agent at the USPTO found that the term "meth lab cleanup" was either generic or descriptive without secondary meaning. Dkt. #135-8 at 5. Meth Lab Cleanup once again sought reconsideration, stating that it already had trademarks for "Meth Lab Cleanup LLC" and that its use of "Meth Lab Cleanup" had been continuous and substantially exclusive. Dkt. #135-13 at 2. Once again, the USPTO granted the trademarks after reconsideration. *See* Dkt. #1-1 at 5-7.

In 2009, four employees of Bio Clean attended a Meth Lab Cleanup training at Ms. Borst's instruction. Dkt. #43 at 4, ¶ 15.

In 2012, Bio Clean made two relevant changes to its website. First, it changed one of the tabs that listed the services Bio Clean offered from "Drug Lab Cleanup & Disposal" to "Meth Lab Cleanup." *See* Dkt. #43-1 at 3-4. Second, it added "meth lab cleanup" as one of the metatags on its website. *See* Dkt. #143-11 at 6-10. Meth Lab

ORDER – 2

1  Cleanup then sent Bio Clean two letters notifying Bio Clean that it was infringing on
2  Meth Lab Cleanup's trademark. *See* Dkt. ##1-5, 1-7.  When Bio Clean did not change its
3  website, Meth Lab Cleanup initiated this lawsuit, suing Bio Clean for violations of the
4  federal Lanham Act and Washington unfair competition and trademark law. *See* Dkt. #1
5  at 12-16, ¶¶ 49-72.  Bio Clean counterclaimed, asking for cancellation of all six of Meth
6  Lab Cleanup's trademarks, and alleging that Meth Lab Cleanup had engaged in false
7  advertising. *See* Dkt. #17 at 24-28, ¶¶ 117-141.

8    Meth Lab Cleanup filed a Motion for Partial Summary Judgment, asking for
9  judgment as to liability on Meth Lab Cleanup's three claims, as well as dismissal of all
10 six of Bio Clean's trademark cancellation counterclaims. Dkt. #42 at 1. The motion
11 requested that damages be left for a jury to decide, and did not ask for dismissal of Bio
12 Clean's seventh counterclaim for false advertising. *See id.*

13   Bio Clean responded to the Motion for Partial Summary Judgment, arguing that
14 Meth Lab Cleanup was not entitled to summary judgment because there was a genuine
15 issue of material fact as to whether Meth Lab Cleanup had procured its trademarks
16 through fraud. *See* Dkt. #47 at 6.  The only evidence Bio Clean offered of this alleged
17 fraud was that Meth Lab Cleanup was aware at the time of applying for the trademarks
18 that two other companies had used the term "meth lab cleanup" to describe their work.
19 *See id.* at 8-9.  Bio Clean argued that this meant Meth Lab Cleanup had committed fraud
20 when it declared that its use of the phrase was continuous and substantially exclusive. *Id.*
21 Bio Clean also vaguely argued that the term "meth lab cleanup" was generic. *See id.* at 2.

22   This Court granted Meth Lab Cleanup's motion. Dkt. #54 at 15.  The Court found
23 that, even if Meth Lab Cleanup was aware that two other businesses had used the term
24 "meth lab cleanup," that still did not raise a genuine issue of fraud, because Meth Lab
25 Cleanup's statement was that its use was "substantially exclusive" not "completely
26 exclusive." *Id.* at 9-10.  The Court also found that Bio Clean had offered no evidence
27 with which to create a genuine issue of genericness. *Id.* at 12.
28 ORDER – 3

1    After the partial summary judgment motion was granted, the parties began
2    preparing for trial on damages. In the parties' proposed pretrial order, Bio Clean argued
3    that one of the issues still remaining in the case was Bio Clean's affirmative defense of
4    senior use. Dkt. #59 at 2, 4. At a pretrial telephone conference, the Court indicated that
5    this issue should have been raised in response to the summary judgment motion. Dkt.
6    #70 at 16. Bio Clean's local counsel stated that it was raised, although perhaps not
7    highlighted, but the Court had not ruled on it. *Id.* After the telephone conference, this
8    Court issued an order allowing Bio Clean to file a motion for summary judgment on its
9    fair use defense. Dkt. #67 at 1. However, the Court noted that the issue of senior use had
10   not been squarely raised in Bio Clean's response to the summary judgment motion. *Id.* at
11   1 n.1. The only mention of Bio Clean's senior use in the response related to the fraud
12   defense, and not to a separate defense of senior use. *Id.*

13    Bio Clean then filed a motion for summary judgment on their senior use defense,
14   asking that all of Meth Lab Cleanup's claims be dismissed, and all of Meth Lab
15   Cleanup's trademarks be cancelled. Dkt. #71 at 2, 15. The evidence submitted in
16   support of this motion was limited to Bio Clean's prior use of the phrase "meth lab
17   cleanup." *See* Dkt. ##72—72-4. Meth Lab Cleanup then filed a response, arguing that
18   Bio Clean had not used the phrase *as a trademark* prior to Meth Lab Cleanup's use of the
19   phrase as a trademark, and therefore Bio Clean was not the senior user. Dkt. #83 at 13.

20    Prior to the filing of Meth Lab Cleanup's response, Bio Clean filed a substitution
21   of counsel. Dkt. #75. New counsel then filed a reply. Dkt. #89. The reply briefly
22   reiterated the argument that Bio Clean was the senior user of the disputed trademark. *See*
23   *id.* at 10. However, the reply also argued at more length that the term "meth lab cleanup"
24   was generic or descriptive without secondary meaning, and that Bio Clean's use of the
25   phrase was protected by fair use. *See id.* at 4-5, 8-13. The reply alleged that the Court
26   had not ruled on any of these affirmative defenses, and so they remained for trial. *Id.* at
27   8. In support of these new arguments, Bio Clean attached declarations and documents
28   ORDER – 4

showing generic or descriptive use of the phrase "meth lab cleanup" by Bio Clean and by other competitors, governmental entities, Yellow Page listings, and newspapers. *See* Dkt. ##90-125.

Meth Lab Cleanup filed a surreply, asking the Court to disregard the evidence submitted in the reply, since the vast majority of it had not been disclosed in discovery, and it was irrelevant to the issue of senior use. Dkt. #128 at 1.

Instead of ruling on the motion for summary judgment, this Court terminated the motion and allowed Bio Clean to file another motion for summary judgment addressing senior use, fair use, genericness, and secondary meaning. Dkt. #130. The Court did so in part to allow Meth Lab Cleanup to respond to the new evidence and arguments that were presented for the first time in Bio Clean's reply brief. *See id.* at 1. Bio Clean then filed the present motion. Dkt. #133.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

ORDER – 5

*Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150-51 (2000).

## IV.  ANALYSIS

a.  <u>Scope of the Motion</u>

Before discussing the merits of Bio Clean's motion, it is important to note the scope of evidence and arguments that the Court will consider on this motion.

Meth Lab Cleanup argues that the validity of their trademarks and the issue of Bio Clean's infringement have already been decided, in the Court's Order granting partial summary judgment to Meth Lab Cleanup.  Dkt. #142 at 24-25.  Meth Lab Cleanup also argues that the vast majority of the evidence now presented by Bio Clean was not disclosed in discovery, and all of it should have been presented in response to Meth Lab Cleanup's motion for partial summary judgment.  *See id.* at 9-12, 25.  Bio Clean acknowledges that the evidence was not timely disclosed, but argues that the Court should nevertheless admit the evidence because Bio Clean's failure to disclose "was substantially justified or . . . harmless."  Dkt. #147 at 3 (quoting  Fed. R. Civ. P. 37(c)(1)).

The Court agrees with Meth Lab Cleanup that all of the arguments now raised by Bio Clean should have been raised in response to Meth Lab Cleanup's motion for partial summary judgment.  *See* Dkt. #142 at 25.  The Court's Order granting that motion, and finding Bio Clean liable for trademark infringement, implicitly rejected all of Bio Clean's affirmative defenses to liability for infringement.  *See* Dkt. #54.  It is true that the Order did not specifically mention most of these affirmative defenses, but that is only because Bio Clean did not mention them in its response to Meth Lab Cleanup's motion for summary judgment.  *See* Dkt. ##47, 54.  The Court, therefore, would be well within its discretion at this point to simply rely on its previous Order and deny Bio Clean's motion.  However, the Court also retains the power to reconsider or rescind its previous Order.  Since the Order addressed only liability and not damages it was an interlocutory order, *see Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976), and therefore the Court

ORDER – 6

retained the power to reconsider or rescind it when justice so requires *see City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (2001).

The Court finds that justice requires it to reconsider its original Order. The original grant of summary judgment was based largely on the lack of evidence submitted by Bio Clean's prior counsel. *See* Dkt. #54. Bio Clean's new counsel has worked diligently to brief this motion, and has produced substantial and compelling evidence to support Bio Clean's affirmative defenses. *See* Dkt. ##133-135. In light of this substantial and compelling evidence, the Court will address Bio Clean's affirmative defenses anew on this motion, and not treat its previous Order as binding.

Similarly, the Court will consider all of the new evidence submitted on this motion, despite Bio Clean's failure to timely disclose it in discovery. While the Court cannot say that Bio Clean was "substantially justified" in failing to bring this evidence forward earlier, *see* Fed. R. Civ. P. 37(c)(1), the Court does note that it was Bio Clean's former counsel that failed to timely disclose this evidence, and not its current counsel. More importantly, the Court finds that Meth Lab Cleanup will not be prejudiced by the untimely disclosure. *See id.*

Meth Lab Cleanup first saw the evidence at issue on February 26, 2016, when Bio Clean filed its reply to the senior use motion for summary judgment. *See* Dkt. ##90-125. This Court then ordered that Bio Clean file a new summary judgment motion, in order to allow Meth Lab Cleanup an opportunity to respond to Bio Clean's new arguments and evidence. *See* Dkt. #130. Meth Lab Cleanup was thus on notice that it needed to prepare a response to the evidence, and had two months to do so. *See* Dkt. #142 (filed April 25, 2016). And Meth Lab Cleanup has, in fact, responded to the new evidence. Meth Lab Cleanup has produced multiple declarations attempting to contradict Bio Clean's declarations. *See* Dkt. ##142-1—142-9. Meth Lab Cleanup was apparently already familiar with all of Bio Clean's declarants, and was able to develop arguments and evidence to attack the declarants' credibility. *See* Dkt. ##142 at 16-17, 144-145. Since

ORDER – 7

Bio Clean's evidence is so compelling, and Meth Lab Cleanup has been given a fair opportunity to respond to it, the Court will consider all of the evidence submitted by both parties.

    b. Merits

Turning to the merits of the motion, Bio Clean moves this Court for summary judgment on Meth Lab Cleanup's claims for trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), and Washington common law trademark infringement and unfair competition. *See* Dkt. ##1 at 12-16, ¶¶ 49-72, 133 at 27. Bio Clean also asks for summary judgment on Bio Clean's six counterclaims for trademark cancellation. *See* Dkt. ##17 at 24-27, ¶¶ 117-134, 133 at 27.

    *i. Trademark cancellation*

This Court has the power to cancel invalid trademarks. 15 U.S.C. § 1119. Bio Clean urges this Court to cancel Meth Lab Cleanup's trademarks for three reasons. First, Bio Clean argues that "meth lab cleanup" is generic, and thus cannot be trademarked. Dkt. #133 at 16-18. Second, Bio Clean argues that if "meth lab cleanup" is not generic, then at the very least it is descriptive, and it has not acquired secondary meaning. *Id.* at 19-22. Third, Bio Clean argues that if "meth lab cleanup" can be trademarked, then Bio Clean is the senior user of the trademark, and so Meth Lab Cleanup's trademarks must be cancelled. *Id.* at 22-24.

    1. Genericness

Federal trademark law arranges marks on a spectrum of distinctiveness. *See Surgicenters of Am. Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir. 1979). As marks get more distinctive, they receive more protection. *See id.* The least distinctive type of mark is a generic mark. *Id.* Generic marks are marks that simply name the product or service being offered. *See id.* ("A 'generic' term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species."). "If the buyer understands the word to refer to the source of the

ORDER – 8

goods, the term is not generic. However, if the disputed term is identified with all such goods or services, regardless of their suppliers, it is generic." *KP Permanent Make-Up Inc. v. Lasting Impression I Inc.*, 408 F.3d 596, 604 (9th Cir. 2005) (internal quotation marks omitted).

A generic mark can never be trademarked, and genericness is a sufficient reason to cancel a trademark. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). However, a properly registered trademark "is presumed valid, and the burden of proving that the mark is generic rests upon the defendant." *See Krav Maga Ass'n of Am., Inc. v. Yanilov*, 464 F. Supp. 2d 981, 985 (C.D. Cal. 2006) (citing *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005)).

In order to overcome the presumption, Bio Clean must offer actual evidence that the term "meth lab cleanup" "was used or understood by consumers as a generic term [for the services offered] rather than a brand name." *KP Permanent Make-Up*, 408 F.3d at 606. This could be done by presenting the following: "(1) generic use by competitors of the mark that has not been contested by the owner of the mark; (2) generic use of the trademark by the proponent of the trademark; (3) dictionary definitions to determine public usage; (4) generic usage in the media of the trademark, such as in trade journals and newspapers; (5) testimony of persons in the trade; and (6) consumer surveys." *Calista Enters. Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099, 1116 (D. Or. 2014) (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1150-51 (9th Cir. 1999)).

Bio Clean has offered evidence in the first five categories. Bio Clean has submitted thirty-nine declarations from Bio Clean employees, former employees, and others in the industry, attesting that the term "meth lab cleanup" is used by everyone in the industry generically to name the services they offer, and has been used that way for the last 30 years. *See* Dkt. ##133-2—133-40. Bio Clean has bolstered these declarations with documents showing use of the phrase, and similar phrases, on competitors' websites,

ORDER – 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14

and in a PowerPoint Presentation Bio Clean has been giving since 2001. *See* Dkt. ##133-18, 134-1, 135-15. Bio Clean has also offered numerous examples of the term "meth lab cleanup," or similar terms, being used in newspaper articles, in the names of legislation, on governmental agencies' websites, and in online Yellow Pages. *See* Dkt. ##134-1—134-2, 134-6—134-8, 135-1—135-7, 135-12, 135-15, 141. Bio Clean has even given four different examples of Meth Lab Cleanup itself using the phrase in a generic way. *See* Dkt. ##135-7 at 26, 36, 135-16 at 7, 11. In addition, Bio Clean has submitted dictionary definitions for "meth," "methamphetamine," "lab," "laboratory," and "cleanup," showing that the services performed match the dictionary definitions and thus, presumably, consumer expectations. *See* Dkt. #135-7 at 41-45. The only type of evidence Bio Clean did not produce was evidence from actual customers. While that information would have been useful, even without that evidence, Bio Clean's submissions are still quite persuasive in showing that the term "meth lab cleanup" is generic.

15
16
17
18
19
20
21
22
23

Meth Lab Cleanup does not respond directly to Bio Clean's genericness argument. *See* Dkt. #142. There is not a separate section of Meth Lab Cleanup's brief devoted to whether the phrase "meth lab cleanup" is generic. *See id.* The word "generic" is used only five times in Meth Lab Cleanup's brief – once in the section on secondary meaning, twice in the section on prior use, and twice in the section on whether the Court's prior order should be controlling. *See id.* at 17, 24. Since Meth Lab Cleanup's brief does address secondary meaning, *see id.* at 12-17, the Court has done its best to discern the arguments and evidence that Meth Lab Cleanup has put forth with regards to secondary meaning that also apply to genericness.

24
25
26
27

Meth Lab Cleanup has submitted declarations from eleven people in the industry that are relevant to genericness. *See* Dkt. ##43, 142-1—142-9, 143-145. Four of these declarations are from Joseph Mazzuca and Julie Mazzuca, who are principals of Meth Lab Cleanup. *See* Dkt. ##43, 143-145. One of Julie Mazzuca's declarations states that

28  ORDER – 10

when she started Meth Lab Cleanup in 2003, the phrase "meth lab cleanup" was not in common use. Dkt. #43 at 6-7, ¶ 28. The commonly used phrase was "clandestine drug lab assessment and decontamination." *Id.* Joseph Mazzuca also declares that "meth lab cleanup" is not a commonly used phrase in other countries. Dkt. #144 at 7, ¶ 11. These bare statements by Meth Lab Cleanup's principals have very little evidentiary value. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) ("Trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark."). Moreover, they are clearly contradicted by the evidence submitted by Bio Clean showing that the phrase "meth lab cleanup" has frequently been used generically in the industry.

Joseph Mazzuca and Julie Mazzuca spend a significant amount of time in their declarations attacking Bio Clean's evidence. Both argue that the PowerPoint presentation that Bio Clean has submitted, showing Bio Clean's generic use of the phrase "meth lab cleanup" since 2001, may be fabricated. *See* Dkt. ##143 at 6, ¶ 17, 144 at 25, ¶ 28. But they offer no real evidence of this beyond speculation. *See id.* Joseph Mazzuca also points out that many of the exhibits submitted by Bio Clean are duplicative. *See* Dkt. #145. While this is true, and somewhat frustrating to the Court, it does not change the fact that Bio Clean has submitted numerous non-duplicative examples of the phrase "meth lab cleanup" being used generically.

Joseph Mazzuca also points out that many of the declarations from competitors in the industry come from competitors who do not use the exact phrase "meth lab cleanup" on their website. *See* Dkt. #144. He also argues that many of the exhibits do not contain the exact phrase "meth lab cleanup." *See* Dkt. #145. But this argument misses the point. It is not necessary that "meth lab cleanup" be the only generic name for these services. "Meth lab cleanup" does not even need to be the most common generic name for the services. All that matters is whether "meth lab cleanup" is *one of* the generic names for

ORDER – 11

the services. Bio Clean's evidence shows that is the case. Meth Lab Cleanup's evidence shows only that there exist several other generic names for the same services. *See* Dkt. ##144-145. But other examples of other generic names do not undermine Bio Clean's proof that "meth lab cleanup" is a generic name.

Joseph Mazzuca also goes to great lengths showing that Bio Clean's declarants have heard of Meth Lab Cleanup. *See* Dkt. #144. According to Mr. Mazzuca, this shows that the declarants have all testified falsely in stating that, to their knowledge, the term "meth lab cleanup" "is not associated with any particular company." *See id.*; Dkt. ##133-2—133-40. However, it is clear from the context of the entire declarations that the declarants are not intending to state that they have never heard of a company called Meth Lab Cleanup. Instead, their intention is to show that, to them, the term "meth lab cleanup" is not associated with only one company, but is associated with all the companies in the industry. *See, e.g.*, Dkt. #133-2. This statement is not undermined by the declarants' knowledge that a company named Meth Lab Cleanup exists.

Joseph Mazzuca also points out that Bio Clean's declarants are biased. *See* Dkt. #144. He states that many of them are Bio Clean employees or former employees, and the others are Meth Lab Cleanup's competitors, many of whom are involved in litigation with Meth Lab Cleanup. *See id.* The Court acknowledges this fact in its assessment of the weight of this evidence. However, this fact applies even more strongly to Meth Lab Cleanup's "third party" declarations.

Meth Lab Cleanup has submitted nine declarations from professionals in the industry. *See* Dkt. ##142-1—142-9. All nine of them declare that they are not aware of anyone in the industry using the term "meth lab cleanup" to describe the services they offer. *Id.* However, all nine of these declarations are from sub-contractors who work for Meth Lab Cleanup. *Id.* This makes them almost as biased as current Bio Clean employees, and even more biased than Bio Clean's other industry declarants. *See Self-Realization Fellowship Church*, 59 F.3d at 910. Moreover, Bio Clean has submitted

ORDER – 12

evidence that five of the nine declarants use the phrase "meth lab cleanup" on their own websites to describe the services they offer. *See* Dkt. #148. The importance of this fact cannot be overstated. More than half of the declarants testifying that they do not know of anyone in the industry using "meth lab cleanup" in a generic manner are, themselves, using meth lab cleanup in a generic manner. Even if the other four declarants truly do not know of anyone using the phrase in a generic way, their personal knowledge would be irrelevant, since Bio Clean's evidence clearly shows that the phrase is, in fact, used generically in the industry, regardless of whether these four sub-contractors are aware of it.

Finally, Meth Lab Cleanup argues that Bio Clean has not submitted any evidence from consumers. Dkt. #142 at 17. This is true. But neither has Meth Lab Cleanup. Moreover, given the numerous examples Bio Clean has submitted of generic usage of the phrase "meth lab cleanup" in newspapers, by governmental agencies, in online Yellow Pages, and by competitors in the industry, the Court finds no reasonable jury could conclude that the phrase "meth lab cleanup" is not generic. The Court therefore finds that there is no genuine issue of material fact as to whether Meth Lab Cleanup's trademarks are invalid. Accordingly, the Court GRANTS Bio Clean's motion for summary judgment on all six of its counterclaims for trademark cancellation.

2. <u>Descriptiveness and Secondary Meaning</u>

In the alternative, the Court finds that even if "meth lab cleanup" was not a generic mark, it would still be a descriptive mark without secondary meaning, and therefore still invalid and subject to cancellation.

A descriptive mark is a mark that "describes the qualities or characteristics of a good or service." *Park 'N Fly*, 469 U.S. at 194. Descriptive marks can only be trademarked if they have acquired a "secondary meaning." *Id.* "To determine whether a descriptive mark has secondary meaning, a finder of fact considers: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the

ORDER – 13

producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005).  In the Ninth Circuit, consumer surveys can be the most persuasive evidence of secondary meaning.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc).

A mark cannot be both generic and descriptive.  *See Park 'N Fly*, 469 U.S. at 193-94.  As discussed above, the Court finds that the term "meth lab cleanup" is generic.  The Court finds that "meth lab cleanup" would be understood by consumers as the name of the services offered, and not as a description of the qualities or characteristics of the services offered.  Nevertheless, even if the Court were to assume that "meth lab cleanup" was not a generic mark, it would certainly be a descriptive mark.  Even Meth Lab Cleanup does not contest this.  *See* Dkt. #142 at 12-14.  The question then becomes whether the phrase "meth lab cleanup" has acquired secondary meaning.  *See Park 'N Fly*, 469 U.S. at 194.

The USPTO originally found that the phrase "meth lab cleanup" was descriptive without secondary meaning.  *See* Dkt. ##48 at 3, ¶ 8, 135-8 at 5.  Meth Lab Cleanup then submitted a declaration stating that Meth Lab Cleanup had been using the phrase continuously and substantially exclusively for at least five years.  *See* Dkt. ##135-13 at 2, 146 at 3, ¶ 5.  Based on this declaration, the USPTO found that "meth lab cleanup" had acquired secondary meaning, and allowed Meth Lab Cleanup to register its marks.  *See* Dkt. #1-1 at 2-7.  This registration entitles Meth Lab Cleanup to a presumption of secondary meaning.  *See* 15 U.S.C. §§ 1057(b), 1115(a); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1116 (N.D. Cal. 2010).  However, as discussed in more detail above, Bio Clean has rebutted this presumption by showing that Meth Lab Cleanup was not the substantially exclusive user of the phrase.  Bio Clean's evidence clearly shows that competitors, newspaper reporters, governmental agencies,

ORDER – 14

and online Yellow Pages all used the phrase "meth lab cleanup" to describe the services offered by all competitors in the industry, and not just Meth Lab Cleanup. *See* Dkt. ##133-2—133-40, 134-1—134-2, 134-6—134-8, 135-1—135-7, 135-12, 135-15, 141. Since Meth Lab Cleanup was granted registration based on its assertion of substantial exclusivity, and Bio Clean has shown that Meth Lab Cleanup's use was not substantially exclusive, Bio Clean has overcome the presumption of validity created by the registration, and shifted the burden back to Meth Lab Cleanup to show that consumers associate the phrase "meth lab cleanup" with their company. *See Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009).

Meth Lab Cleanup has not done this. Meth Lab Cleanup has not submitted any consumer surveys or other direct evidence of consumer beliefs. Instead, Meth Lab Cleanup has offered the testimony of its principals and sub-contractors that *they* associate the phrase "meth lab cleanup" with their company, *see* Dkt. ##43, 142-1—142-9, 143-145, but this evidence is entitled to little weight, *see Self-Realization Fellowship Church*, 59 F.3d at 910. Meth Lab Cleanup has also not shown lengthy use, since it has only been in business since 2003. *See* Dkt. #43 at 1, ¶ 2. As to advertising, Julie Mazzuca states that Meth Lab Cleanup has spent $92,521 in advertising over the last five years. *See* Dkt. #143 at 4, ¶ 12. As proof, Meth Lab Cleanup has submitted a couple of print ads. *See* Dkt. #143-9. However, Meth Lab Cleanup has not submitted any evidence about the exposure of the relevant consumer base to this advertising, as compared to the advertising of its competitors. The mere fact that Meth Lab Cleanup has engaged in some advertising is not enough, by itself, for a jury to find that consumers associate the phrase "meth lab cleanup" with this company in particular.

In sum, given the lack of exclusivity, and the lack of evidence from actual consumers, the Court finds that no reasonable jury could conclude that the phrase "meth lab cleanup" has acquired secondary meaning. This finding would serve as an alternative basis for the Court to GRANT Bio Clean's motion for summary judgment.

ORDER – 15

### 3. Senior Use

Since the Court has found that no reasonable jury could conclude that the phrase "meth lab cleanup" can be trademarked, Bio Clean's counterclaims for trademark cancellation based on senior use are moot. However, in the interest of completeness, the Court notes that if there was a genuine issue of material fact as to whether "meth lab cleanup" could be trademarked, the Court would not grant summary judgment to Bio Clean based on its senior use defense.

A trademark can be cancelled if the challenger to the mark can show that the challenger used the mark prior to the trademark holder's use. *See Sengoku Works Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). Bio Clean argues that *any* prior use is sufficient for cancellation, and so Bio Clean's prior descriptive use of the phrase "meth lab cleanup" makes Bio Clean the senior user. *See* Dkt. #133 at 23. This argument is based on a single quote from a single district court case. *See id.* (quoting *Minutemen Press Int'l, Inc. v. Minute-Men Press, Inc.*, No. C 81 1832, 1983 U.S. Dist. LEXIS 19613 (N.D. Cal. Jan. 31, 1983). However, all that case says is that a trademark can be cancelled even if "the challenger used the term in a nontrademark sense, *e.g., as a trade name*." *Id.* (emphasis added) (internal quotation marks omitted). This comports with the court's earlier statement that priority goes to "the first to use the mark *as either a name or mark*." *Id.* (emphasis added). Bio Clean does not allege that it used the phrase "meth lab cleanup" as either a name or a mark, but rather that it used the phrase in a generic way to describe its services. *See* Dkt. #134 at 3, ¶ 9. Generic or descriptive use of a phrase does not create priority. *See* 2 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition* § 16:34 (4th ed. 2013) ("[M]ere priority of use (as for technical trademarks) is insufficient. It is the party who first achieved trademark significance in the mark through secondary meaning who is the senior user of such a mark."). Therefore, if the Court had determined that a jury could find that the phrase

ORDER – 16

"meth lab cleanup" could be trademarked, the Court would DENY summary judgment to Bio Clean on its fair use defense.

### ii. Effect of Trademark Cancellation on Meth Lab Cleanup's Claims For Trademark Infringement and Unfair Competition

All three of Meth Lab Cleanup's claims for trademark infringement and unfair competition require proof of a valid trademark. *See eAcceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1114 (W.D. Wash. 2006). The Court has found that there is no genuine issue of material fact as to whether Meth Lab Cleanup's trademarks are generic and invalid. The Court therefore GRANTS Bio Clean's motion for summary judgment on all three of Meth Lab Cleanup's claims.

### iii. Bio Clean's Fair Use Defense

Since the Court has granted summary judgment to Bio Clean based on the invalidity of Meth Lab Cleanup's trademarks, Bio Clean's fair use defense has become moot. However, even if the Court had found that Meth Lab Cleanup's trademarks were valid, the Court would still grant summary judgment to Bio Clean based on fair use.

Fair use is an affirmative defense to trademark infringement. 15 U.S.C. § 1115(b)(4); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004). The classic fair use defense involves the use of a descriptive trademark. *See id*. at 122. In order for the defense to apply, the defendant must show that the trademark was "used descriptively, not as a mark, fairly, and in good faith." *Id.* at 124. Bio Clean argues that it has only ever used the phrase "meth lab cleanup" in a descriptive manner, not as a trademark, and that its use has been fair and in good faith. *See* Dkt. #133 at 26-27.

Meth Lab Cleanup acknowledges that, in the past, Bio Clean used the phrase "meth lab cleanup" in a descriptive sense, and that use did not constitute infringement. *See* Dkt. #142 at 18, 22-23. However, Meth Lab Cleanup argues that, starting in 2012,

ORDER – 17

Bio Clean began deliberately and in bad faith using the phrase in a trademark sense. *See id.* at 18-20.

Meth Lab Cleanup points to two uses on Bio Clean's website that it claims are not protected by fair use. *See id.* at 7, 18. First, Bio Clean changed one of the tabs listing the services offered by Bio Clean from "Drug Lab Cleanup & Disposal" to "Meth Lab Cleanup." *See id.*, Dkt. #143-11 at 3-4. Second, Bio Clean added the metatag "meth lab cleanup" to its website. Dkt. ##142 at 7, 18, 143-11 at 6-10. Meth Lab Cleanup argues that these uses were not in good faith, and were intended to divert business from Meth Lab Cleanup. *See* Dkt #142 at 19. However, the only evidence Meth Lab Cleanup has offered to support its claim of bad faith is that Bio Clean made these change after four of its employees attended a training session by Meth Lab Cleanup. *See id.* at 3. Meth Lab Cleanup misleadingly claims that the website changes came "shortly" after the training. *See id.* However, closer inspection reveals that Bio Clean employees attended the training in 2009, *see* Dkt. #43 at 4, ¶ 15, and *three years later*, in 2012, the changes to the website were made, *see* Dkt. #143-11 at 3-4. This long interval between the training and website changes negates any inference of bad faith.

There is also no genuine issue of fact that these uses on Bio Clean's website are descriptive, and not trademark uses. The first use of the phrase "meth lab cleanup" is as a label on one of many tabs that users can click to see different services offered by Bio Clean. *See* Dkt. #143-11 at 4. Other tabs nearby include "Bed Bugs," "Bio-Recovery," "Hoarders," and "Crime Scene." *See id.* Before the changes to the website, this tab was labeled "Drug Lab Cleanup & Disposal." *See id.* at 3. At the top of Bio Clean's website, in much larger letters, is the name "BioClean, Inc." with a symbol. *See id.* at 4. In this context, it is clear that Bio Clean, Inc. is the source of the services, and "Meth Lab Cleanup" is simply one of the services offered.

The other use on the website, in the metatags, is also descriptive, and not as a trademark. The vast majority of visitors to the website will not see the metatag, so it

ORDER – 18

doesn't make sense to claim Bio Clean is using this invisible tag to indicate the source of its services. Moreover, the context of this metatag, in amongst other tags such as "crime scene cleanup," "biohazard cleanup," "blood," "body fluid," and "hoarding cleanup," *see* Dkt. #143-11 at 9, shows that the phrase is being used to describe Bio Clean's services, and not to describe the source of those services.

In sum, there is no genuine issue of material fact that Bio Clean used the phrase "meth lab cleanup" "descriptively, not as a mark, fairly, and in good faith." *See KP Permanent Make-Up*, 543 U.S. at 124. Therefore, if the Court had not granted summary judgment to Bio Clean based on trademark invalidity, the Court would still GRANT summary judgment to Bio Clean based on its fair use defense.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. Dkt. #133. The Court hereby **ORDERS** as follows:

1. That portion of the Court's December 15, 2015 Order dealing with Plaintiff's Motion for Partial Summary Judgment is **RESCINDED.** Dkt. #54.
2. Defendants' Motion for Summary Judgment is **GRANTED.** Dkt. #133.
    a. Summary judgment is granted in favor of Defendants on Plaintiff's claims for federal unfair competition, pursuant to 15 U.S.C. § 1125(a) (*see* Dkt. #1 at 12-13, ¶¶ 49-56), Washington State common law trademark infringement and unfair competition (*see* Dkt. #1 at 13-14, ¶¶ 57-64), and federal trademark infringement, pursuant to 15 U.S.C. § 1114 (*see* Dkt. #1 at 15-16, ¶¶ 65-72).
    b. Summary judgment is granted in favor of Bio Clean and against Plaintiff on Bio Clean's counterclaims for "Cancellation and Declaration of Invalidity" of Plaintiff's federal trademark registrations. *See* Dkt. #17 at 24- 27, ¶¶ 117-134.

ORDER – 19

      c. Bio Clean's seventh counterclaim for false advertising in violation of 15 U.S.C. § 1125(a) (*see* Dkt. #17 at 27-28, ¶¶ 135-141) is not addressed by this Order.

DATED this 31st day of August, 2016.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 20